411 P.2d 40

Catherine FISH, Appellant,

v.

H. S. REDEKER, Jr., Appellee.

No. 1 CA–CIV 141.

Court of Appeals of Arizona.

Feb. 15, 1966.

Ryley, Carlock & Ralston, Phoenix, by John C. Ellinwood, for appellant.

Alan L. Hammond, Phoenix, for appellee.

STEVENS, Chief Judge.

Catherine Fish, contestee in the lower court, appeals from an adverse lower court judgment in an election contest.

The facts which are pertinent to this decision are as follows: Mrs. Fish, hereinafter referred to as appellant, was seeking re-election as a Republican Precinct Committeewoman for District 27, Madison 2 Precinct, Maricopa County, Arizona, at the 8 September 1964 primary election. She was also serving as a duly appointed election marshal of said precinct. As marshal, appellant was seated at the table with the members of the election board and was the first election official which voters entering the polls would normally meet. Upon the completion of the canvas of the election returns appellant was declared elected.

By an amended complaint filed 2 October 1964, appellant was charged with committing a violation of the election laws, to wit: making her name known to prospective voters by and through personal introduction after voters entered the polling place, but prior to the time they cast their vote, and committing such acts with the intent to gain favor for herself, and persuade prospective voters to vote for her. Appellant answered the amended complaint on 5 November 1964, and the matter was tried to the court without a jury on 7 January 1965.

On 12 January 1965, the court in its first memorandum of opinion found that appellant was electioneering in violation of § 16–903, subsec. 1, A.R.S. and that the penalty for electioneering was forfeiture of the office. A formal written judgment in accordance with the memorandum of opinion was signed 1 February 1965. The judgment stated that the election of appellant should be set aside in accordance with § 16–1205,

subsec. E, and that the candidate receiving the next highest number of votes, Horace Brown, should be declared elected.

Thereafter appellant timely filed her motion to vacate judgment and amend judgment; and motion for new trial. On 19 February 1965, the lower court denied all of appellant's motions in accordance with a second memorandum of opinion. In this memorandum of opinion the lower court adhered to its finding that appellant did electioneer in violation of § 16–903, subsec. 1, A.R.S. The opinion further stated that electioneering within the prohibited area is an offense against the elective franchise within the meaning of § 16–1201 A.R.S. and that since the court had entered judgment annulling and setting aside the election of appellant·under the mandate of § 16–1205, subsec. D, A.R.S. the votes cast for her were a nullity and consequently Horace Brown, who had the next highest number of legal votes, was declared elected.

On appeal, appellant urges that she did not electioneer on election day, that her conduct did not constitute an offense against the elective franchise and that her conduct, even if constituting electioneering, was not grounds for a judgment setting aside her election.

Section 16–903 is contained in Article 10, "Voting", under Chapter 7, "Conduct of Elections", Title 16, "Elections and Electors". In part, the section reads as follows:

"A person who commits any of the following acts is guilty of a misdemeanor punishable by imprisonment in the county jail for not less than one nor more than six months:

1. Electioneers on election day within a polling place or in a public manner within one hundred fifty feet of a polling place."

■ The Court was neither directed to, nor able to, find a statute or case defining the term "electioneers". Webster's Third New International Dictionary defines electioneer as "to take an active part in an election campaign: as a: to campaign for one's own election. b: to try to sway public opinion esp. by the use of propaganda". Appellant submits that electioneering requires that a candidate persuade eligible voters to cast their ballots for him for a particular office. We are unable to agree. In our opinion, electioneering encompasses an attempt on the part of an individual or candidate to persuade or influence eligible voters to vote for a particular candidate, party or proposition, and that such an attempt when made within one hundred fifty feet of the polling place on an election day while votes are being cast, constitutes electioneering in violation of § 16–903, subsec. 1 A.R.S.

The purpose behind this type of statute was set forth in State v. Robles, 88 Ariz. 253, 355 P.2d 895 (1960). In that case the court was considering the constitutionality of § 16–862 which makes it a misdemeanor for any person, after voting, to remain inside fifty-foot limits. In holding § 16–862 constitutional, the Arizona Supreme Court stated:

"The purpose of these notices, limiting the area within the boundaries of which voters who have voted and other interested persons other than those named in the Act may not remain, is to prevent interference with the efficient handling of the voters by the election board and to prevent delay or intimidation of voters entering the polling place by political workers seeking a 'last chance' effort to change their vote."

■ In the present case, while the testimony is conflicting, there is ample evidence from which the trial judge could have found appellant was electioneering within the prescribed statutory limit. Appellant was heard or over-heard throughout the day to introduce herself as "Mrs. Fish" or "Catherine Fish" as prospective voters entered the polling place and on two occasions was over-heard to state "Remember Catherine Fish". Further, appellant admitted introducing herself by name.

■ The Court is aware that there is frequently socializing between friends and

neighbors at the polling places and that incumbents or candidates when they enter the polls are frequently addressed by name or title. The Court does not by this opinion intend to imply that balloting need be conducted in silence or that election officials should not be courteous and friendly. However, when a candidate serves as a member of the election board or as an election marshal in the precinct in which his name appears on the ballot and continuously introduces himself by name to voters as they enter the polls to vote, the conclusion is inescapable that he is trying to get his name before the voters in a last chance effort to influence the votes in violation of the letter and spirit of § 16–903, subsec. 1.

▇▇▇ We are unable to agree with the trial judge's conclusion that electioneering constitutes an offense against the elective franchise or grounds for an election contest. No issue was raised as to whether election contests may be filed in relation to a party office. We see no reason why an election to a party office may not be contested on the same basis one would contest the nomination or election to a country or state office.

▇▇▇ Election contests are purely statutory and dependent upon statutory provisions for their conduct. Sorenson v. Superior Court, 31 Ariz. 421, 254 P. 230 (1927); Griffin v. Buzard, 86 Ariz. 166, 342 P.2d 201 (1959).

Section 16–505 relating to contest of primary elections states:

"Contests arising out of primary elections shall be brought and determined in the same manner, as nearly as possible, as provided by law for contests of general elections."

Contest of an election is provided for in the Arizona Revised Statutes § 16–1201 to 16–1207 inclusive. Section 16–1204 relating to a contest of county or other election provides in part:

"A. An elector of a county, city, town or a political subdivision of such county, city or town, may contest the right or a person declared elected to an office to be exercised therein * * * on the same grounds and in the same manner as contests of election to a state office * * *."

The grounds for contest of state election are set forth in § 16–1201, subsec. A. This section reads in part:

"A. Any elector of the state may contest the election of any person declared elected to a state office, or declared nominated to a state office at a primary election, * * * upon any of the following grounds:

*　　*　　*　　*　　*　　*

"3. That the person whose right is contested, or any person acting for him, has given to an elector, inspector, judge or clerk of election, a bribe or reward, or has offered such bribe or reward for the purpose of procuring his election, *or has committed any other offense against the elective franchise.*" (Emphasis added)

In the earlier codes of Arizona the title and chapter headings are so arranged that there is no problem in determining what is meant by the expression "offenses against the elective franchise".

Title IV of Part I of both the 1901 and 1913 Penal Codes is headed "Of Crimes Against the Elective Franchise". Chapter 99 of the 1928 Code is likewise entitled "Crimes Against the Elective Franchise". In the 1939 Code the same subject matter is dealt with in Article 15 (entitled "Elections") of Chapter 43 (entitled "Criminal Offenses").

In the 1956 Arizona Revised Statutes, however, the material covered by these chapters and titles was scattered among various non-consecutive sections. None of these sections deal with the offense of electioneering at the polling place on election day. This offense was made punishable by § 2348 of the Civil Code of 1901 as a part of Title 20 entitled "Elections" which was incorporated almost verbatim in the 1913 Civil Code as § 2968. The same material with certain changes was incorporated in §

1220 in the 1928 Code found in Chapter 22 entitled "Elections". It appears in revised form as § 55–516 of the 1939 Revision of Article 5 of Chapter 55 entitled "Elections", and in the 1956 A.R.S. appears as § 16–903.

It is thus apparent that in Arizona the misdemeanor of electioneering on Election Day at a polling place has never been treated as an "Offense against the Elective Franchise".

Subsection A, par. 3 of § 16–1201 A.R.S. quoted above appears as § 3060 of the 1913 Civil Code and is there designated as a "new section". It is almost verbatim the present section, except that it ends with the words:

"* * * or has committed any other offense against the elective franchise *defined in the penal code.*" Emphasis added)

The italicized wording also appears in the version in § 1323 of the 1928 Code and in § 55–1501 of the 1939 Code. It was eminently proper to omit these words from the present section in view of the fact that many of the offenses against the elective franchise are not found in the present Criminal Code (Title 13) but in Title 16, that pertaining to elections. There is absolutely nothing to indicate that it was the intention of the Legislature to make all election law violations offenses against the elective franchise. It is to be noted that § 16–1311 A.R.S. (1956) shows a distinction between the two classes of crimes for it states:

"The provisions of this title defining crimes involving elections and crimes against the elective franchise, * * *."

■ It should be noted that subsection A, par. 3 of § 16–1201 refers to two specific offenses, namely bribes or rewards. Under the doctrine of ejusdem generis, electioneering as defined in this opinion would not be included within the phrase "other offense against the elective franchise". Clearly offering bribes or rewards is of a much higher nature or degree of offense than campaigning within the polling place. Nor is there any evidence that Mrs. Fish deprived, by means of bribery, coercion or duress, a voter of his right to freely cast his ballot or that by fraudulent device or contrivance she defrauded the electors and caused them to vote for a different person for the office. Merely campaigning within the election polls would not deprive a voter of the opportunity to exercise his free and unfettered judgment within the meaning of § 16–1201, subsec. A, par. 3.

While appellant's conduct at the polling place is not to be condoned, it does not come within the statutory definition of grounds for an election contest.

■ The sanction set forth in § 16–903 for electioneering is a criminal prosecution for a misdemeanor. The statute is clear and unambiguous on its face. Section 16–903 does not provide that a violation thereof compels a forfeiture of office nor is there an indication it is to be read in conjunction with Sections 16–1201, 16–1204 or 16–1205. This Court is reluctant to deprive a successful candidate of the fruits of an election unless such penalty is specifically set forth by statute. If forfeiture is to be the penalty for electioneering, it is up to the Legislature not the courts, to so declare.

We hold that the trial court erred in finding electioneering at the polls constitutes an offense against the elective franchise within the meaning of § 16–1201, subsec. A, par. 3, and that the penalty for such electioneering is a forfeiture of office.

The judgment of the lower court is reversed and the matter remanded with directions to enter judgment in accordance with this opinion.

DONOFRIO, J., concurring.

JOHN A. McGUIRE, Superior Court Judge (concurring).

I concur in this decision and in all that is said in the opinion except that portion relating to the application of the rule of ejusdem generis to the statutory expression "other offense against the elective franchise".

·This· Court has unanimously held as a matter of statutory interpretation that the offense of electioneering at the polling place does not come within the term "offense against the elective franchise". Hence, it is not a ground for an election contest.

I consider any discussion as to what rule would apply in the case of an act which is an offense against the elective franchise, but not of the same seriousness as giving bribes or rewards, is unnecessary to the decision and is dicta.

I, therefore, express no opinion on this point.

NOTE: Judge James Duke Cameron having requested that he be relieved from the consideration of this matter, Superior Court Judge John A. McGuire was called to sit in his stead and participate in the determination of this decision.